IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiffs,<br><br>  vs.<br><br>JOHNNY PALERMO,<br><br>          Defendant. | **4:23CR3051**<br><br>**DETENTION ORDER** |
| UNITED STATES OF AMERICA,<br><br>          Plaintiffs,<br><br>  vs.<br><br>JOHNNY PALERMO,<br><br>          Defendant. | **4:23CR3052** |

Following the defendant's arraignment, the government moved for Defendant's detention, stating Defendant's release would pose a risk of harm to the public, nonappearance, and obstruction of justice. Based on the grand jury's findings, the court concluded Defendant's release would pose a serious risk of obstruction or attempted obstruction of justice, and of actual or attempted intimidation of witnesses. The court convened a hearing on the government's motion for detention. See 18 U.S.C. 3142(f)(2). Defendant was represented by his retained counsel, and he was afforded the opportunity to cross-examine the government's witness, call his own witnesses, proffer information, and testify himself if he chose to do so. After considering the information presented, the court finds the defendant must be detained pending trial.

A pretrial services report outlining Defendant's history and characteristics was prepared and received by the court. See 18 U.S.C. § 3142(g)(3). Based on that report, Defendant has lived in Omaha for over 20 years, and at the same address for the last 17 years. He graduated from an Omaha high school, his parents live in the Omaha area, and his children live in Omaha. His daughter lives with him. Defendant retired from the Omaha Police Department on January 17, 2023, after 20 years of service. He owns firearms, but his parents are willing to secure those arms in their home. He has no physical or mental health issues, is not addicted to drugs or alcohol, and has no criminal record.

In addition to the information provided by pretrial services, the court must consider the nature and seriousness of the crime charged, the weight of the government's evidence, any facts indicating a risk of flight or obstruction of justice, and the nature and seriousness of the danger to the community or any person if the defendant is released. 18 U.S.C. § 3142(g)(1-2). The government presented substantial evidence on these issues. Based on the wire taps of record, the context of which was explained by the government's testifying agent, the court finds the following for the purposes of this detention hearing only:

Defendant has a history of engaging in dangerous and illegal activity. While on a trip to San Diego, he was part of a group (which included at least one of the codefendants) that beat up a lone victim. The victim was beaten and thrown against a refrigerator. Although the extent of Defendant's personal involvement is unclear, the record establishes that Defendant did not report the beating to law enforcement. Court Ex. 1, at pp. 10-11. Moreover, Defendant had travelled to San Diego with Vincent Palermo despite knowing that Vincent Palermo was on probation, that his supervising probation officer was unaware of the trip, and that Vincent Palermo was not permitted to travel outside Nebraska without his supervising officer's consent. Court Ex. 1, at p. 141.

2

On a separate occasion, Defendant was a passenger in a vehicle driven by an intoxicated driver. When the driver had an accident, Defendant fled scene. The driver lied to the officer investigating the accident, claiming Defendant was not with him when the accident occurred. Defendant knew of the lie and never corrected it. Instead, when the Bellevue police attempted to talk with Defendant about the accident and left messages asking for a return call, the phone messages were not returned. Court Ex. 1, at pp. 17-21.

Defendant used illegal drugs (along with alcohol) on a trip to Colorado. Court Ex. 1, at p. 22. His history of illegal conduct also includes exchanging gummies containing illegal drugs for sex. Court Ex. 1, at p. 24.

Based on the wire taps and evidence of record, Defendant affiliates and assists gangs which conduct illegal drug and firearms crimes in Omaha. Members of the Lomas gang state Defendant can be called to get them out of trouble, and they can do drugs in front of him because "he's on our team; he lets us know if there's an investigation." Court Ex. 1, at p. 31. Defendant admits that he "sticks with [his] day ones man," Court Ex. 1, at p. 32, and members of the MBC (Must be Criminal) gang are encouraged to cut a deal with Defendant to stay out of trouble while dealing drugs. Court Ex. 1, at p. 33.

When codefendant Jack Olson was under investigation for rape, the initial investigating officers were assigned to Defendant's work location, but after concerns were raised about inside information being leaked, the case was reassigned to a different location. Olson was willing to speak with the investigating detective until Defendant advised Olson not to talk. Court Ex. 1, at p 109. When the detective continued her pursuit of the investigation, Defendant advised Olson to say the sexual encounter was consensual; that based on his

3

experience, the alleged victim's statements and DNA would not be enough to support Olson's prosecution if Olson stated the sexual encounter was consensual. Court Ex. 1, at p. 113. Defendant further advised Olson to lie to the investigator and state he (Olson) had a lawyer so the investigator would not ask questions. Court Ex. 1, at p. 123. Defendant instructed Olson to keep Defendant's name out of the investigation, was concerned when Olson failed to do so, and stated that if asked, he would deny being present at the bar where Olson met the alleged victim, noting it would be his word against theirs. Court Ex. 1, at pp. 110, 118-19.

The indictment alleges the defendants used the LPOA as a means of collecting donations for purported youth athletic programs, but instead used the money themselves. The LPOA website stated the organization "is dedicated to providing at-risk youth with the opportunity to develop discipline, self-esteem, and positive moral values through wholesome competition" and that "100% of your donations go directly towards the athletic programs. Court Ex. 1 at pp. 47-48. The website listed "Detective Palermo" as the person to contact with any questions about LPOA Youth Athletics. Court Ex. 1 at p. 48. The donor letter used by LPOA stated that "Sponsorships fund equipment purchases, field maintenance, and uniforms. Proceeds from every penny of your sponsorship goes toward this LOCAL program." Court Ex. 1 at pp. 49-50. The donor letter listed Johnny Palermo as the President of the LPOA Board of Directors and concluded with the thanks of "Omaha LPOA President, and OPD Detective Johnny Palermo." Court Ex. 1, at pp. 49-50.  Codefendant Jack Olson, using the alias Cody Jones, contacted donors and using a script approved by Defendant, told the donors that the funds collected were used for athletic programs for at-risk and disadvantaged youth. Court Ex. 1 at pp. 51-52. In reality, no such programs existed, and Defendant knew Olson was personally receiving 80% of all donations collected. In addition, Defendant allowed Olson to borrow money from

the LPOA. Court Ex. 1, at p. 63. Defendant also knew Cody Jones was an alias, but he did not tell the LPOA board and when directly asked, led the board members to believe he was unaware of the alias. Court Ex. 1, at pp. 71-72, 74.

Defendant knew Olson was spending the money received from LPOA donations to drink and gamble. Court Ex. 1, at p. 103. But Defendant himself was also personally receiving and/or benefitting from the donated funds, including a trip to Las Vegas and restaurant gift cards. Court Ex. 1, at pp. 72, 91-94, 114, 129-30. Defendant knew his use of LPOA funds was illegal; he warned others involved to get an attorney when he suspected Olson was going to "roll." Court Ex. 1, at p. 96.

Based on the foregoing facts of record, the court finds, by clear and convincing evidence, that Defendant's release would pose a serious risk of obstruction of justice and of harm to the public.

The court has considered whether conditions of release, or a combination of such conditions, would sufficiently ameliorate the risk posed by Defendant's release. While restricting and/or monitoring the defendant's movements and prohibiting his access to other's funds may ameliorate the risk of harm to the public posed by Defendant's release, such restrictions will have little or no impact on the risk that Defendant will obstruct justice is released. Defendant used phone conversations to deter the investigation of a rape case. If released, Defendant could likewise gain access to a telephone, and perhaps email and social media, to contact witnesses and discourage them from cooperating with law enforcement and testifying. While Defense counsel suggested prohibiting Defendant from having access to a phone, Defendant could nonetheless use others' phones or burner phones despite being under the careful supervision of pretrial services. The court would need to trust the defendant to follow the court's

5

orders. Defendant's conduct as described in this order provides little basis for trusting the Defendant to comply with a court order prohibiting his contact with codefendants and witnesses to coach or orchestrate their testimony.

The court therefore finds, by clear and convincing evidence, that no conditions or combination of conditions of release would sufficiently lessen the risk of obstruction of justice posed by Defendant's release pending trial. Defendant will be detained.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated this 28th day of April, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge